J. BLOODGOOD *v.* J. M. WILSON.

A purchaser of a slave affected with a supposed incurable malady at the time of sale, is not entitled
to recover back the price paid, in a redhibitory action, when, being advised by a physician, a few
days after the sale, of the existence of disease, he fails to offer to return the slave, or neglects to
employ a physician to arrest the disease.

APPEAL from the Second District Court of New Orleans, *Lea*, J.
Bayne, for plaintiff and appellant, cited: *Kock & McCall* v. *Slatter*, 5
An. 739. 2 An. 67. *Harvey* v. *Kendall*, 2 An. 748. 6 An. 396. C. C. 2496,
2504.

*Moïse* and *W. M. Randolph*, for defendant.

OGDEN, J. This is a redhibitory action. The plaintiff has rendered it pro-
bable by the evidence, that the slave purchased by him from the defendant

was unsound at the time of the sale; but we agree with the District Judge, that he has not made out such a case as would justify a judgment in his favor.

The slave was purchased on the 2d June, 1851. She was then examined by a physician called for that purpose by the plaintiff, and pronounced to be sound. On the 11th June following, she was examined by another physician, with a view to effecting a life insurance on her. The physician, after auscultating her lungs, pronounced them diseased, and advised that the application should be withdrawn. It does not appear that after this discovery, any offer was made to return her as unsound. She was set to work in the reeling-room of a cotton factory, and no physician appears to have been called to prescribe for her until after the first of August. She died on the 16th or 18th of October following. The girl does not appear to have complained or to have labored under any suffering while she was at work in the factory. The same physician who reported her unsound to the insurance company, attended her in her last illness, and testifies that she died of *phthisis pulmonalis*, which is generally considered an incurable disease. No *post mortem* examination was made.

We think that the girl manifested no outward symptoms of disease at the time of the sale, nor until two months afterwards—that no offer was made by the plaintiff to return her on the report being made that an insidious disease was secretly destroying her—that no medical aid was then resorted to for arresting or alleviating the disease—and that, when she died, no *post mortem* examination was made to test the accuracy of the *diagnosis* of the physician who attended her, it would not be consistent with the principles established by frequent decrees of this court, to render the defendant liable under such circumstances.

It is therefore ordered, that the judgment of the court below be affirmed, with costs.